NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

13-1261

JONATHAN PARKER

VERSUS

FLANAGAN INSPECTION & TESTING, L.L.C., ET AL.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2012-5546
HONORABLE EDWARD B. BROUSSARD, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

PHYLLIS M. KEATY
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of J. David Painter, Phyllis M. Keaty, and John E. Conery, Judges.

AFFIRMED.

Jonathan Parker
In Proper Person
830 Belle Drive
Breaux Bridge, Louisiana 70517
(337) 315-9503
Plaintiff/Appellant

**Daniel S. Foley**
**Barker, Boudreaux, Lamy and Foley**
**228 St. Charles Avenue, Suite 1110**
**New Orleans, Louisiana  70130**
**(504) 586-9395**
**Counsel for Defendants/Appellees:**
      **Flanagan Inspection & Testing, L.L.C.**
      **Henry Flanagan**

**Frank E. Barber**
**Attorney at Law**
**116 Field Street**
**New Iberia, Louisiana  70560**
**(337) 256-8370**
**Counsel for Defendants/Appellees:**
      **Flanagan Inspection & Testing, L.L.C.**
      **Henry Flanagan**

**KEATY, Judge.**

Plaintiff, Jonathan Parker, appeals the judgment rendered by the trial court in favor of Defendants, Flanagan Inspection & Testing, L.L.C. and Henry Flanagan. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

This matter arises from a claim for recovery of income as an alleged employee under La.R.S. 23:632.[1] Mr. Parker is the owner of Omni-Tech, L.L.C., and Mr. Flanagan is the sole managing member of Flanagan Inspection. Mr. Parker and Mr. Flanagan allegedly agreed to work together on the Oregon Bridge Coating Inspection Project (Oregon project) for the Oregon Department of Transportation. Mr. Parker was allegedly never paid compensation from Flanagan Inspection as a result of his work on the Oregon project.

As a result, Mr. Parker filed a lawsuit against Defendants to recover his lost wages pursuant to La.R.S. 23:631 and 23:632.[2] Mr. Parker's claim rested on his allegation that he was an employee of Defendants. Defendants denied that an employer/employee relationship existed between the parties. Defendants asserted that they did business with Mr. Parker through his limited liability company, Omni-Tech, in the form of a partnership or joint venture.

---

[1] Louisiana Revised Statutes 23:632 provides:

> Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.

[2] Louisiana Revised Statutes 23:631 discusses discharge or resignation of employees and payment after termination of employment.

Following a bench trial, the trial court ruled in favor of Defendants. In its oral reasons for judgment, the trial court found that Mr. Parker was not an employee of Defendants, and, as a result, Mr. Parker was not entitled to recovery under La.R.S. 23:632. The trial court concluded that the relationship between Mr. Parker and Defendants was a joint venture.

Mr. Parker is now before this court asserting that: (1) the trial court erred by finding that he was not an employee of Flanagan Inspection when he signed contracts and bank cards as an employee manager of Flanagan Inspection; (2) the trial court erred by failing to sanction Defendants for failing to provide him with a pre-trial memorandum in keeping with the trial court's scheduling order (discovery) deadline stipulation; and (3) the trial court erred by not signing the recusal when it showed prejudice against him by not sanctioning Defendants for not following the pre-trial memorandum order deadline and not reading his pre-trial memorandum and pleadings prior to trial.

## DISCUSSION

### I.  Employer-Employee Relationship or Joint Venture

In his first assignment of error, Mr. Parker contends that the trial court erred by finding that he was not an employee of Flanagan Inspection. Mr. Parker alleges that the trial court's reasoning for determining his employment status is not consistent with the standard provided in *Hall v. Folger Coffee Co.*, 03-1734 (La. 4/14/04), 874 So.2d 90. Mr. Parker contends that in *Hall*, the court employed a five-factor test to determine whether there was a principal/independent contractor

2

relationship as opposed to an employer/employee relationship.[3] Mr. Parker alleges that the trial court erroneously applied a partner/joint venture relationship to his relationship with Flanagan Inspection.

In opposition, Defendants contend that the trial court did not commit manifest error when it made a finding of fact that Mr. Parker was not an employee of Flanagan Inspection.

This court has held that the determination of whether an employer/employee relationship, or some other relationship such as a joint venture relationship exists, is a question of fact under which the manifest error standard of review applies. *Hillman v. Comm-Care, Inc.*, 01-1140 (La. 1/15/02), 805 So.2d 1157, and *Latiolais v. BFI of La., Inc.*, 567 So.2d 1159 (La.App. 3 Cir. 1990). Under this standard, "a factual finding cannot be set aside unless the appellate court finds that the trier of fact's determination is manifestly erroneous or clearly wrong." *Detraz v. Lee*, 05-1263, p. 7 (La. 1/17/07), 950 So.2d 557, 561 (citing *Smith v. La. Dep't of Corrs.*, 93-1305 (La. 2/28/94), 633 So.2d 129). "[A]n appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous" in order to reverse a fact finder's determination of fact. *Id.*

The Louisiana Supreme Court has noted that "[t]here are no hard and fast legal rules fixing the requisites for a joint venture; each case must be considered *sui generis* and care must be exercised that consideration is given to the usages and practices characteristic of the particular commercial undertaking sought to be

---

[3] After our review of *Hall*, we are unable to find where the court allegedly employed a five-factor test to determine the existence of a principal/independent contractor relationship as opposed to an employer/employee relationship.

labeled a 'joint-adventure [sic].'" *Hero & Co. v. Farnsworth & Chambers Co., Inc.*, 236 La. 306, 322-23, 107 So.2d 650, 655-56 (1958).

In its oral reasons for judgment, the trial court stated:

Mr. Parker, you have the burden of proof and you have the burden of proving to me today that you were an employee and not a sub-contractor or y'all weren't partners in any way. And you haven't met that burden.

Some of the things you look at are did you have regular working hours and apparently not. Were you paid hourly? Apparently, you weren't even paid from January through August 31st. No paychecks were issued.

It just sounds like it was a joint venture to me. So, I'm going to find that you were not an employee and therefore, you don't have a cause of action under Title 23 which you sued on.

In its written reasons for judgment, the trial court found that Mr. Parker failed to satisfy his burden of proving by a preponderance of the evidence that he was an employee of Defendants. As such, the trial court declined to proceed with a trial for damages. The trial court rendered judgment in favor of Defendants, dismissing Mr. Parker's claims.

Our review of the record indicates that Mr. Parker offered into evidence an e-mail authored by himself which states that "Omni-Tech and Flanagan worked together under a joint venture relationship." Mr. Parker also entered into evidence another e-mail authored by him using the e-mail address "JayParker@TeamOmniTech.com." That e-mail stated, "The Omni-Tech logo on the Flanagan documents simply shows that we are working together as partners (joint venture)."

When questioned by Mr. Parker at trial, Mr. Flanagan testified as follows:

Q: I have a document I would like you to look at. It's a check here. And if you can tell me who the check is from, what it's for.

4

A: It's an Omni-Tech check for $280.00. I'm not sure; I can't read it.

Q: Okay. Let me read this item here. It says, "Omni-Tech, LLC." And you believe that to be my company?

A: Yes.

Q: You know that to be my company?

A: Yes.

Q: And it says, "To the corporation division $280.00." And it says "For Flanagan Inspection & Testing, LLC." And it bears my name.

After this colloquy, Mr. Parker entered the check as an exhibit into the record.

Mr. Flanagan further testified that the profits of the Oregon project were split between Flanagan Inspection and Omni-Tech. Mr. Flanagan stated that Mr. Parker never received a paycheck. Mr. Flanagan testified that Mr. Parker never asked him to fill out a tax form identifying himself as an employee. Had Mr. Flanagan filled out a tax form, Mr. Flanagan testified that it would have resulted in Flanagan Inspection issuing him a payroll check and deducting social security or federal income tax.

Mr. Flanagan testified that he was the sole managing member of Flanagan Inspection and that the company had a contractual relationship with Omni-Tech and not Mr. Parker. Mr. Flanagan testified that there was neither an agreement nor discussion that Mr. Parker would be considered an employee of Flanagan Inspection.

Our review of the testimony and evidence presented at trial demonstrates that there was a clear and rational basis for the trial court's finding of fact that Mr. Parker was not an employee of Flanagan Inspection. Accordingly, the trial court was not manifestly erroneous.

## II.    <u>Sanctions</u>

In his second assignment of error, Mr. Parker argues that the trial court erred by not sanctioning Defendants after learning in the judge's chambers prior to trial that Defendants failed to provide Mr. Parker with a pre-trial memorandum according to the scheduling order deadline.   Mr. Parker contends that defense counsel lied by informing Mr. Parker through a series of e-mails that the trial court extended the pre-trial memorandum deadline.

In opposition, Defendants contend that the trial court did not abuse its discretion when it granted Defendants' one-day extension to file its bench book of exhibits and a memorandum of facts and law.[4]   Alternatively, Defendants contend that these documents were timely filed.

With respect to modification of a pre-trial order, Louisiana jurisprudence provides:

> The matter of whether to modify a pre-trial order is solely within the discretion of the trial judge.   Absent an abuse of discretion, the decision of the trial judge will be upheld.   In deciding whether to modify a pretrial order, a trial court must be ever mindful of the fact that the objective of our legal system is to render justice between the litigants upon the merits of the controversy rather than to defeat justice upon the basis of technicalities. *Naylor* [*v. La. Dep't of Pub. Highways*], 423 So.2d [674,] 683 [(La.App. 1 Cir. 1982), *writs denied*, 427 So.2d 439, 429 So.2d 127 (La.1983)].   There is no authority to limit severely a party's rights for the technical, though justifiable, violation of a pretrial order *Neff v. Rose*, [546 So.2d 480 (La.App. 3 Cir.), *writ denied*, 551 So.2d 1322 (La.1989)].

*McDuffie v. Acands, Inc.*, 00-2779, p. 3 (La.App. 4 Cir. 2/14/01), 781 So.2d 628, 631.

---

[4] Although the scheduling order requires a "pre-trial memorandum," Defendants refer to their pre-trial memorandum as a bench book of exhibits and a memorandum of facts and law.

Our review of the scheduling order indicates that a pre-trial memorandum was due eight days before the scheduled trial date of August 12, 2013. The expiration of eight days fell on Sunday, August 4, 2013. The record further contains an e-mail from Dan Foley[5] to Mr. Parker on July 31, 2013, advising that Frank Barber's mother passed away. Mr. Foley further advised that the trial court extended the deadline for exchanging the bench book of exhibits to Monday, August 5, 2013. Mr. Foley sent another e-mail to Mr. Parker on August 5, 2013, wherein he reminded Mr. Parker of the alleged one-day extension. Mr. Foley also advised that Defendants' bench book of exhibits had been delivered to the trial court and that Mr. Parker should receive Defendants' bench book at his house by the end of the day on August 5, 2013. In that same e-mail, Mr. Foley attached a copy of Defendants' memorandum of facts and law. The record shows that Defendants' memorandum of facts and law was filed with the clerk of court on August 5, 2013. It also contained a certification by Mr. Foley that he mailed a copy of same to Mr. Parker on August 5, 2013.

At trial, Mr. Foley testified that defense counsel contacted the trial court and received permission to have the bench book of exhibits and the memorandum of facts and law delivered on Monday, August 5, 2013. Mr. Foley testified that the foregoing was delivered to the trial court's office in Abbeville, to the clerk of court's office in Lafayette, and to Mr. Parker's home on August 5, 2013. Mr. Foley testified that the foregoing was done with the consent of the trial court. Mr. Foley advised that Mr. Barber contacted the trial court's law clerk. The record, however, does not contain a court order granting the extension.

---

[5] Dan Foley and Frank Barber are Defendants' counsel of record.

Based on the above, we find that the trial court granted an extension. The trial court did not abuse its discretion in modifying its pre-trial order to extend the filing deadline by one day to accommodate the disruption of defense counsel's schedule on account of his mother's death and funeral. *See McDuffie*, 781 So.2d 628. To suggest otherwise would limit a trial court's ability to direct its own proceedings in the manner afforded by La.Code Civ.P. art. 1551.[6] Thus, Mr. Parker's assignment of error is without merit.

## III. <u>Recusal</u>

In his third assignment of error, Mr. Parker contends that the trial court erroneously denied the recusal order after showing prejudice against him and favoritism towards Defendants after the trial court was made aware that Defendants failed to comply with discovery pertaining to the pre-trial order. In opposition, Defendants contend the trial court did not abuse its discretion when it denied Mr. Parker's request for a recusal after it rendered a judgment.

In that regard, La.Code Civ.P. art. 154 provides:

> A party desiring to recuse a judge of a district court shall file a written motion therefor assigning the ground for recusation. This motion shall be filed prior to trial or hearing unless the party discovers the facts constituting the ground for recusation thereafter, in which event it shall be filed immediately after these facts are discovered, but prior to judgment. If a valid ground for recusation is set forth in the motion, the judge shall either recuse himself, or refer the motion to another judge or a judge ad hoc, as provided in Articles 155 and 156, for a hearing.

Our review of the record indicates that Mr. Parker filed a Motion to Recuse Judge on August 13, 2013, one day after the trial concluded. The trial court issued a ruling from the bench on the day of trial, August 12, 2013. Mr. Parker's motion to recuse was based on the trial court's decision to allow Defendants' pre-trial

---

[6] This statute discusses pre-trial scheduling conferences and pre-trial orders.

8

memorandum be admitted even though they were filed on Monday, August 5, 2013, and allegedly in violation of the scheduling order. In his appellate brief, Mr. Parker contends that he objected to Defendants alleged failure to comply with the scheduling order in the judge's chambers on the date of the trial. The trial transcript shows that this meeting in the judge's chambers, and subsequent objection, took place prior to the beginning of the trial on August 12, 2013. The record further shows that Mr. Parker objected to Defendants' alleged failure to comply with the scheduling order in open court at the trial on August 12, 2013.

Based on the above evidence, the alleged grounds for recusal were discovered at the commencement of trial. Since Mr. Parker's motion was not filed prior to trial and since Mr. Parker knew of the facts constituting the grounds for recusation prior to trial, Mr. Parker failed to comply with the requisites of La.Code Civ.P. art. 154. Accordingly, Mr. Parker's assignment of error is without merit.

## DECREE

The judgment rendered by the trial court is affirmed. All costs of this appeal are assessed against Jonathan Parker.

**AFFIRMED**.

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2–16.3.